WILLIAM JARVIS v. THE TOWN OF BARNARD AND DANIEL
AIKENS.*

*Liability of towns for the acts and neglect of their town clerks.*

If one who, as the agent of another, has, with the town clerk's knowledge,
examined the records in the latter's office, to ascertain the state of the title
of certain land, and has found no encumbrance thereon, inquire of the town
clerk, in his office, if he knows of any encumbrance on the land, and request
him, if he does, to show it, this constitutes a proper request to the town
clerk to show the record of all encumbrances of which he is cognizant; and
if, knowing of the existence of encumbrances, he reply that there are none,
and shows none, and the inquirer, relying on such reply, make a loan in
behalf of his principal, on the security of a mortgage of the land, both the
town clerk and the town are liable to the principal for all damages he may
sustain by reason of the existence of such encumbrances, notwithstanding
the town clerk furnished the inquirer with all the books of records in which
these encumbrances were recorded.

This was an action on the case in two counts, for the alleged neg-
lect of the defendant Aikens, as town clerk of the town of Barnard.

The first count set forth that the plaintiff being about to make a
loan to the defendant Aikens, upon a mortgage of certain lands in
Barnard, which Aikens proposed to execute to him, inquired of
Aikens, as such town clerk, whether there were any incumbrances
upon said lands, and requested him, as such town clerk, to show the
records thereof to him, if there were any; but that Aikens, well
knowing the existence of certain encumbrances (named in the writ)
upon said lands, did not disclose their existence to the plaintiff, nor
show him the records thereof, but represented that said lands were
free of encumbrance; that the plaintiff was thereby induced to make
the loan and receive the mortgage of the said lands from Aikens,
which he would not have done had he known of the existence of
said encumbrances; that certain encumbrances (naming them) did
exist upon said lands, at the time of the execution of the said
mortgage to the plaintiff, which were duly recorded in the land
records of the town of Barnard, by the enforcement of which, the
plaintiff had lost a large portion of the security for his loan, and
had been put to great expense in defending the suits brought

---

*REDFIELD, CH. J., having presided at the trial below, did not sit in this
case.

Jarvis *v.* Town of Barnard et al.

against him upon said encumbrances, which suits had resulted adversely to the plaintiff; and that Aikens, from the time of the discovery by the plaintiff of the existence of the said encumbrances, had been wholly insolvent.

The second count set forth that one of said encumbrances, being a mortgage of part of said lands, from Aikens to one Southgate, had been duly recorded by Aikens, as town clerk, but that neither Aikens nor any one else, until after the execution of the mortgage to the plaintiff, made any index, alphabet or reference pointing to said mortgage to Southgate, by reason of which the plaintiff, although he examined said records, was unable to discover the existence of that encumbrance, etc., etc.

The defendant pleaded the general issue, and the cause was tried by jury, at the December Term, 1857,—REDFIELD, CH. J., presiding.

On trial, the plaintiff called Hampden Cutts as a witness, who testified that on the 19th day of July, 1845, at the request of the plaintiff, he went to Barnard to examine the title and value of certain lands, which Daniel Aikens proposed to mortgage to the plaintiff, to secure a loan; that he called at the office of Aikens, who was then town clerk, and received from him a list of the lots which he proposed to mortgage, and examined the records by the index; that he found no incumbrance upon the lands; that he should think he examined back fifteen years, but could not tell exactly; that he intended to go back as much as fifteen years; that when he found upon the record, in his examination, a conveyance from Aikens, he examined it, but that he found no incumbrance upon the lands in question; that he inquired for the files of deeds not recorded, and Aikens delivered them to him, and he examined them and found no encumbrance there; that he also inquired for and examined the book of record of attachments, and found no encumbrance there; that after he had examined the records, he asked Aikens whether he knew of, or if there was any encumbrance on any of these lots; and stated that if he did, he (Cutts) wished him to show it, and that Aikens replied there was none; and that having inquired as to the value of the lands, and being satisfied from the examination and the assurances of Aikens that it was a safe loan, he delivered to Aikens the money and received from him the mortgage described

in the declaration, which mortgage was given in evidence by the plaintiff. Upon cross examination, the witness stated that he made the examination at the town clerk's office, that he saw all of the books of records, as he supposed, and examined such of them as he desired and as much as he pleased, that no books were refused to him, and that all of the files of deeds were produced which he saw there or had any reason to suppose were there; that he made his examination with reference to a list of the lands furnished to him by Aikens, when he applied for the loan, upon which the lands in question in this suit were entered by name only, and without description, to wit, thus: "the Paul Ellis lot"—"the west half of lot No. 149"—"the Abial Frye farm"—"the Lease lot"—"the Danforth lot," and the "Jacquish lot." This was substantially all the evidence produced by the plaintiff as to any examination of the records, or any request to Aikens to produce the records, or any representations made by Aikens as to the title to the lands.

It was proved that Daniel Aikens was town clerk of Barnard, from March, 1844, to March, 1847, as alleged in the declaration.

The plaintiff gave in evidence the following records of deeds, among others, in the volumes of town records and the indices to vols. 14 and 15, under letter A, to wit:

On vol. 15, page 75, the record of the mortgage deed from Aikens to the plaintiff, above mentioned.

On vol. 14, page 523, the record of a mortgage deed from Daniel Aikens to Robert Southgate, with the index to vol. 14, under the letter A.

Evidence was given tending to prove that the records made by Aikens, as town clerk, commenced upon page 517 of vol. 14, and that all records, with the indices thereof, preceding that page upon the volume, were made by the preceding town clerk. It was conceded that the tract of land secondly described in the said mortgage to Southgate, was the same land entered upon the list of lots delivered to Cutts under the name of the "Abial Frye farm."

On vol. 10, page 196, the record of a mortgage deed from Willard Caryl to Lemuel Richmond, dated Dec. 27, 1829, and recorded Dec. 27, 1829, and properly indexed at the time, by George R. Winslow, who was then town clerk of Barnard. It was conceded that this deed conveyed the land entered on the list held by Cutts

Jarvis *v.* Town of Barnard et al.

as " the Paul Ellis lot," and that the mill and mill privilege conveyed by said deed, were on the lot of land entered on said list as " the west half of lot No. 149." The condition of this deed was to indemnify said Richmond for signing a note for one thousand dollars, to one Briggs.

On vol. 10, page 193, the record of a deed from Willard Caryl to Rodney C. Caryl, dated Feb. 20, 1830, and recorded Feb. 22, 1830, and duly indexed at the time, by said Winslow, then town clerk. This deed conveyed the lot entered upon said list as " the Paul Ellis lot," and the whole of lot No. 149.

On vol. 10, page 348, the record of a mortgage deed from Rodney C. Caryl to the said Lemuel Richmond, dated May 18, 1831, and recorded May 19, 1831, and duly indexed at the time, by the said Winslow, then town clerk of Barnard. This mortgage conveyed the whole of said " lot No. 149," and was conditioned to indemnify said Richmond for signing the said note of one thousand dollars to said Briggs.

No question was made but that the records of the three last mentioned deeds, duly and properly indexed, existed upon the pages of said vol. 10, at the time of the examination by Cutts, and long previous thereto.

The plaintiff referred to various other matters of record, tending to prove, as was claimed, that the mortgage to Robert Southgate, above mentioned, had not been indexed at the time of the examination made by Cutts.

It appeared that Asa W. Richmond, as assignee of the two Caryl mortgages above mentioned, brought a bill of foreclosure thereon, in the court of chancery, against Daniel Aikens, William Jarvis (plaintiff), and others, which bill was served Nov. 27, 1850, and that he recovered a final decree thereon at the December Term, 1853. Payment was not made of the sum found due in equity, which was six hundred and eighteen dollars and sixty-seven cents, and interest from Aug. 13, 1852, and sixteen dollars and fifty-eight cents costs; and the decree became absolute, and under it Richmond took possession of, and has ever since held the " Paul Ellis lot," and the whole of " lot No. 149."

It also appeared that Robert Southgate brought his action of ejectment to the December Term, 1853, of Windsor County court,

against William Jarvis (plaintiff), and others, predicated upon the mortgage above mentioned from Daniel Aikens to Southgate, and recovered final judgment against Jarvis therein, at the December Term, 1854, for the possession of the premises therein described, which was the land above mentioned as " the Abial Frye farm."

The plaintiff also gave evidence as to the value of the several lots of land above mentioned, and the costs and expenses by him incurred in defending the suits above mentioned.

This was substantially all the testimony introduced on the part of the plaintiff.

The defendants gave in evidence the following records:

On vol. 13, page 51, (which is mentioned and referred to in the mortgage from Daniel Aikens to the plaintiff,) the record of a deed dated March 14, 1837, from Alpheus Howe and others to Daniel Aikens, conveying the " Paul Ellis lot," and " lot No. 149," which was duly indexed at the time of recording, and which referred to vol. 12, page 426, and to vol. 12, page 433.

On vol. 12, page 426, the record so referred to, which was of a mortgage of the " Paul Ellis lot," and of " lot No. 149," from Rodney C. Caryl to said Alpheus Howe and others, which record was duly indexed.

On vol. 12, page 433, the record, also referred to in said record on vol, 13, page 51, of a quitclaim deed of said " Paul Ellis lot," and said " lot No. 149," from said Rodney C. Caryl to said Alpheus Howe and others, dated April 27, 1836, which last mentioned record was duly indexed.

The defendants also gave evidence tending to prove that the mortgage deed above mentioned, from Daniel Aikens to Robert Southgate, recorded on vol. 14, page 523, was recorded at the time it purports upon the record to have been recorded, and was duly and properly indexed at the time it was recorded, and that it was both recorded and indexed long previous to the time of the examination of the records by Cutts, on the 19th day of July, 1845, as above mentioned.

The defendants also gave evidence tending to prove that Daniel Aikens, as town clerk, at the time of said examination, produced and submitted to Cutts, for his inspection and examination, all the books of records and files in his office, and that Cutts made all the

Jarvis *v.* Town of Barnard et al.

examination thereof which he desired, and that said Cutts did not inquire of said Aikens, whether there were encumbrances upon said lands, or any of them, and did not request him, if there were, to show them to him, and that Aikens did not represent to Cutts that there were no encumbrances upon said lands, and that Cutts relied solely upon his own examination of the records for information in respect thereto, and had previously informed Aikens that no statements or representations in respect to the title would be relied upon.

The defendants also examined Aikens as a witness, who gave testimony tending to prove that previous to the examination of the records by Cutts, he, Aikens, supposed and believed, as well as at the time of said examination, that the Caryl mortgages had been fully arranged, so that no encumbrance existed, by reason thereof, upon the lots therein described.

The defendants requested the court to charge the jury, among other things, that if they found that the two Caryl mortgages and the Southgate mortgage were duly recorded and indexed at the time of the examination of the records by Cutts, and that the volumes containing these several records were all submitted to the inspection of Cutts, the plaintiff could not recover.

The court charged the jury according to the defendants' requests, except in certain particulars in respect to which they charged as follows : That if the jury believed from the evidence, that at the time when Cutts made the examination of the records and files, as stated in the evidence, he called upon Aikens, at his office, as town clerk, to show him any encumbrances of record in the office, upon the lands in question, by exhibiting such records, relying upon such request as a means of determining whether, as agent of the plaintiff, he would complete the loan upon the security offered, and this was so understood by Aikens at the time, and he also had in mind and knew at the same time of the records of the encumbrances in his office, which were upon the land, and which caused the loss of the lands to the plaintiff, and regarded them, at the time, as encumbrances, and understood that Cutts, by such request, referred to those encumbrances, so of record, it was Aikens' duty, on such request, as town clerk, to produce such records and submit them to Cutts, as much as if he

33

called for them by name, and that the town were liable for his default in that particular for the damages thereby sustained by the plaintiff; but that in order to give a verdict for the plaintiff upon this ground, the jury should be satisfied that at the time of the request, Aikens knew of the records inquired for, and where they were to be found, or that he had such knowledge of them that he could readily have found them, and that he purposely declined and refused to produce them; that the town were not responsible for, or in any way affected by his representations in regard to such encumbrances, but only by his refusal and neglect to produce such records in his office when so called for; that in regard to the Abial Frye farm, which was admitted to have been included in the mortgage to Southgate, and to have been lost to the plaintiff in consequence, it was claimed by the plaintiff's counsel, in addition to the ground just stated, that this mortgage, although properly recorded, was not entered upon the index at the time of, or before the examination made by Cutts; that if the jury were satisfied of that fact, from the evidence in the case (which the court stated in a manner not excepted to), and that in consequence of such omission by Aikens, as town clerk of said town, Cutts was led into a mistake in regard to the state of the title, in not discovering the existence of such mortgage, from which the plaintiff suffered loss, in the manner the testimony tended to prove, the plaintiff was entitled to recover to the extent of the injury thereby sustained, against the town of Barnard.

The defendants excepted to the charge of the court in the particulars above detailed, and to their refusal to charge as requested.

*Washburn & Marsh,* for the defendants.

*C. Coolidge* and *A. Tracy,* for the plaintiff.

The opinion of the court was delivered by

POLAND, J. It is fairly to be assumed that Cutts, the agent of the plaintiff, in making the examination of the town records of Barnard, which he did make, for the purpose of ascertaining whether there were any encumbrances upon any of the lands which Aikens proposed to mortgage to the plaintiff, failed to discover the record of the two Caryl mortgages, or of the mortgage from Aikens

Jarvis v. Town of Barnard et al.

to Southgate, and that such failure to discover them was known to the defendant Aikens, the town clerk.

It is now insisted by the defendants, that Cutts did not exercise reasonable diligence in searching the records, and that had he done so, he would have discovered the record of these mortgages, and thereby avoided any loss that could happen to the plaintiff from the default or neglect of the town clerk in not showing them to him (if he was guilty of any), and that the plaintiff's loss was the result of, or at least was contributed to, by the negligence of his own agent, and that therefore he can not recover.

We have no occasion here to inquire as to the effect of any such neglect of the plaintiff or his agent, in making search, or how far it might operate as a defence to the town, or town clerk, in a case of positive violation of official duty by the town clerk, because no such question appears to have been raised in the court below, and among the numerous points upon which the court were called to give special instructions, there was none, founded, to any extent, upon the basis that any such negligence was shown or existed. And we discover nothing in the exceptions calling for any instructions to the jury upon that subject. The jury, by their verdict, have found that after the plaintiff's agent had finished this unsuccessful search for mortgages and attachments on the lands, that he then asked Aikens "whether he knew of any, or if there were any encumbrance on any of these lots; that if he did, he wished him to show it;" that Aikens answered there were none, and that he did not show him any; that Aikens at the time, knew of the existence of the records of these mortgages; that there were existing encumbrances on the lands, that he had them then in mind, and knew that the plaintiff's agent's request referred to these encumbrances; that the plaintiff's agent acted upon all this in making the loan and taking his mortgage, and this was so understood by Aikens at the time.

Now arises the only important question in this case. Was it the official duty of the town clerk, under these circumstances, to have produced and shown to the plaintiff's agent, the records of these three mortgages, and was his omission to do so, *an official neglect* or *default*. For any falsehood or deceit perpetrated by him upon the plaintiff, outside of his official duty, the plaintiff's remedy, if he

has any, is by suit against the clerk personally and in his private character.

The statute (see Comp. Stat. p. 117, sec. 36,), among other things, provides " that any town clerk shall be liable to any party injured, if he shall, on a proper request, refuse to show any record, or any files in his office."

Now was this request of the plaintiff's agent upon the town clerk to show these records, a *proper request*, and was what was done by the town clerk, a sufficient compliance with that request; or was it such a *refusal* as the statute intends ?

It is apparent that what is a *proper request*, must depend much upon the particular circumstances of each individual case, and must always be more a question of fact than of law; and so as to the duty of the clerk, and what will be a fair and reasonable compliance with the duty, cast upon him by the statute, must depend much upon the nature of the call upon him, and to some extent upon the information and knowledge he may have of any particular matter inquired after.

It is scarcely possible to lay down any rule to govern cases of this kind, in terms less general than the statute itself. When a town clerk is called upon to show the record of a particular deed *by name*, it could scarcely be doubted but that it would be his duty to *produce* and *show* to the party, the *identical record itself*, and that on such request, it would be no sufficient compliance for the town clerk to produce all the records of the town and tell the party he might see it, provided he could find it.

So on the other hand, a town clerk can not, and ought not to be required to know, or keep in mind, all the records in his office, nor can he be required to make general search of the records for persons, where no specific record is called for, so that if a town clerk is called upon and inquired of, whether there are any encumbrances upon a lot of land named, but no particular record is inquired for, and the town clerk has no knowledge whether there are any encumbrances or not, and so informs the inquirer, it could not reasonably be claimed that the town clerk must search the entire records to give the information asked. It would be a fair and reasonable fulfilment of his duty to furnish the party with a fair opportunity to examine the records and see for himself. But without further

Jarvis *v.* Town of Barnard et al.

discussion of the general question: was the request made by the plaintiff's agent in this case, a proper request? He was there for the very purpose of examining the records of titles of these lands, to see if the plaintiff could safely loan his money on the security of them. He had, in the presence of the town clerk, searched the records and found no encumbrances; he could not inquire for the records of *particular* and *specific* encumbrances, for the very object of his inquiry was to ascertain whether there were any, or not.

It seems to us, if a case could be made where a request would be reasonable and proper, it is here presented, and that the form of the request, to *show any encumbrance he knew of upon the land,* was the only effectual request that could be made under the circumstances.

Did the town clerk sufficiently comply with this request of the plaintiff's agent? It is not questioned but that he had produced for the inspection of the plaintiff's agent, all the books of record in which these mortgages were recorded, and it is claimed this was all he was bound to do.

But before this inquiry and request were made of him, the records had been examined by the plaintiff's agent, and the records of these mortgages not found, and, still unsatisfied, he makes this specific request upon the town clerk.

He knew the purpose of the inquiry, the existence of the record of the encumbrances, and that these were the very encumbrances called for by Cutts; but instead of producing them and showing them to him, he denied there were any. It seems to us, that under all these circumstances, the request was equivalent to a request to produce the record of a *specific deed, or deeds*; and that it was the duty of the town clerk to have acceded to the request. To hold this general production of the books (which had already been fruitlessly searched) a sufficient *showing* of these records, in our judgment, would be a perversion, not only of the spirit, but of the language of the statute. The statute is one of extensive interest to all classes of men, and should receive such a liberal and fair interpretation, as to fully realize to the public at large, the fair performance of their duty by these town officers, and the beneficial results intended to arise therefrom.

The case of *Lyman* v. *Town of Windsor & Edgerton,* 24 Vt.

575, seems a full authority for this view of the case.   That case came before the court upon a demurrer to the plaintiff's declaration. In the second count of it (which the court held good), it was alleged by the plaintiff, that at the time of his negotiation with Edgerton (the town clerk) for the purchase of certain lands in Windsor, he inquired of Edgerton whether there was any encumbrance of record upon the land which he was about to purchase, and if there was, to show the record of it to the plaintiff, but that Edgerton refused to show the record of it to the plaintiff, and did not disclose, but concealed the fact that there was an encumbrance on the premises.   Royce, Ch. J., in the judgment given in that case, says, " and since we must suppose Mr. Edgerton to have been fully aware of the encumbrance, and record of it (which fact is moreover expressly charged on this count, and others), his neglect and refusal to show the record, upon a request, so manifestly timely and reasonable, could be nothing less than a default in official duty, unless he disclosed the existence of the encumbrance, or put the plaintiff in a way to find the record of it by examination."   This same case being sent down, was subsequently tried on the merits before a jury, and was again before this court upon exceptions, at the March Term, 1856, and we have been furnished with the manuscript opinion of the court, as delivered by Isham, J.*   It appears from this report that while the plaintiff Lyman, and Edgerton, were examining the land, during their negotiation, Lyman said to Edgerton, " you are town clerk and can tell me, is there any claim upon this property ?" and that Edgerton said there was not, and that Lyman relied upon this false assurance in making the purchase.   He never went to the clerk's office, or examined the records at all, or even requested to examine them, nor was there any neglect or refusal to show them to him on request.

   The court held, and as we think, with entire correctness, that though Edgerton had grossly deceived and defrauded the plaintiff, he had not been guilty of any *official neglect or default*, for which the town were answerable; that his mere false statements about what appeared on the records, or the fraudulent concealment of his knowledge of what was there contained, would not make the town

* See 29 Vt. 305.

Jarvis *v.* Town of Barnard et al.

liable, when there was no attempt to examine the records, and no request made upon the clerk to show or exhibit them.

The opinion is long and able, and the general subject of the duties and liabilities of town clerks under the statute, and of towns for their defaults, is learnedly discussed, and some general expressions used by the Judge, are much relied upon by the defendants, and we think that some expressions used, as applied to the general subject, are more restrictive of the liability of town clerks than the statute would justify, but, when considered in reference to the special state of facts before the court, there is nothing in the opinion that conflicts with the views now entertained.

The general doctrine of that case, that a town can not be made liable for mere false statements of the town clerk, seems to have been carefully observed by the county court on the trial of this case.

The defendants also claim that the mortgage, taken by the plaintiff's agent, referred to a deed, which, if examined, would have led back to such an examination as would have discovered the two old mortgages.

It is a sufficient answer to that suggestion, that the search of the records, and failure to discover the mortgages, the inquiry of the town clerk and his answer, and failure to produce, had all taken place before the mortgage was written, and the fears and suspicions of the agent had been quieted, so that he supposed there was no further necessity to make inquiry.

There does not appear to be any ground of objection to the charge, upon the theory that the mortgage of Aikens to Southgate was not indexed, and the plaintiff misled by that. The charge in that respect is fully sustained by the case of *Lyman* v. *Windsor and Edgerton.*

We deem the case to have been correctly tried, and the judgment of the county court is affirmed.